UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ASHLEY MARTIN,                                        Docket No.:1:22-cv-03740

                          Plaintiff,
                                                                             **COMPLAINT**

-against-

METROPOLITAN TRANSPORTATION AUTHORITY,
GABRIELLA MARINO, Shield #2767 and                    **JURY TRIAL IS**
GIANFRANCO SORIENTE Shield #2777                      **DEMANDED**
Metropolitan Transportation Authority Police Officers, and
METROPOLITAN TRANSPORTATION AUTHORITY
POLICE OFFICER JOHN DOES, Individually and in their
Official capacities as Metropolitan Transportation Authority
Police Officers, the identity and number of whom are
Presently unknown,

                        Defendants.
------------------------------------------------------------------X

**PRELIMINARY STATEMENT**

1. On September 14, 2021, at approximately 12:30 a.m., 24-year-old Ashley Martin, an African American woman, was traveling on Atlantic Avenue in Brooklyn when her vehicle was struck and was T-boned on the driver's side, by Metropolitan Transportation Authority police vehicle driven by MTA police officer Gabriella Marino, Shield # 2767 and MTA police officer Gianfranco Soriente, Shield # 2777, who was the passenger. The MTA police officers were traveling on Eastern Parkway. The MTA officers did not have their sirens on when they struck Ms. Martin's vehicle. Based on the extensive damage to the driver's side of Ms. Martin's vehicle, the MTA police officers had to pull Ms. Martin out of her vehicle from the passenger side of her vehicle. MTA officer Marino, who was the driver of the MTA police car told my client she did nothing wrong.

2. When Ms. Martin was out of her vehicle the MTA police officers tried to force Ms. Martin to go to the hospital. Ms. Martin said she was okay and declined to go to the hospital. After some back-and-forth between the MTA police officers and Ms. Martin, Ms. Martin agreed to go to the hospital thinking that she is going to get checked out because her car had been T-boned on the driver's side by the MTA police vehicle. The MTA police officers called for an ambulance to come to the scene to take Ms. Martin to Kings County Hospital.

3. Once at the hospital, much to her surprise, the MTA police officers asked Ms. Martin if she would consent to a breathalyzer. Ms. Martin consented to the breathalyzer which was conducted by an NYPD police officer named Willis of the Highway District. It returned a result of .05%, a result which did not reflect that she was driving while intoxicated. Ms. Martin was never arrested at the scene of the accident.

4. At the hospital, a blood alcohol test was performed on Ms. Martin. At the hospital while Ms. Martin was in the hospital bed, a police officer came and handcuffed her to the bed. When she inquired what is going on, the police officer told her that it was procedure. At that point she was arrested. There is no new evidence discovered at the hospital that supported Ms. Martin being arrested at the hospital since she was not arrested at the scene.

5. Ms. Martin sustained injury to her left shoulder. She was falsely arrested as the MTA police officers fabricated how the motor vehicle accident occurred by making false statements about their culpability in the cause of the accident. Ms. Martin's vehicle was totaled, and she has been traumatized by the accident and the false arrest. She had to hire a lawyer to defend her in the criminal case. She also lost her position at her workplace.

6. The MTA police officers had Ms. Martin's vehicle towed by Crown Towing Service, Inc. to 7636 164th Street; Flushing, NY 11366. The MTA police then had Ms. Martin's vehicle

subsequently towed to Master Collision at 525 Lakeview Avenue; Rockville Centre, NY 11570.

7. Ms. Martin's vehicle was never vouchered, and the prosecution stated that they were not holding the vehicle and had no interest in impounding the vehicle or pursuing a forfeiture action against Ms. Martin.

8. Master Collision had maintained that they would not release the vehicle until a Lieutenant Thompson from the MTA gave permission to have it released. The Kings County District Attorney informed Master Collision that the District Attorney was not holding the vehicle and therefore there was no reason why it should be held, specifically, that the vehicle must be released. The District Attorney made several calls and sent emails to this Lieutenant Thompson and the District Attorney's calls and emails were never returned.

9. Contrary to the MTA police officers, statements and their Police Accident Report wherein they stated that Ms. Martin T-boned their vehicle, the damage to Ms. Martin's vehicle revealed her vehicle was T-boned by the MTA police vehicle on the driver's side. The vehicle has been totaled by Ms. Martin's insurance company. The pictures show the substantial damage to Ms. Martin's vehicle. The damage to the MTA police vehicle is proof that the MTA police vehicle struck Ms. Martin's vehicle on the driver's side, to wit, T-boning Ms. Martin's vehicle.

10. The insurance company, USAA repeatedly inquired when they would be able to retrieve the vehicle. The MTA Police denied and impeded the return of Ms. Martin's vehicle. Master Collision stated that they would not release the vehicle without the permission of the MTA police. The insurance company had already paid out for the damage to Ms. Martin's vehicle and needed the vehicle returned to them. The insurance company advised that the longer the

vehicle remained at Master Collision, the more the storage fees would accrue to their detriment. In fact, at some point the insurance company would pass those storage fees along to Ms. Martin, much to her detriment.

11. Although, Ms. Martin's blood alcohol was taken at the hospital, there were no blood alcohol results. There were no blood alcohol results that showed Ms. Martin was driving while intoxicated. Accordingly, the criminal charges against Ms. Martin were dismissed.

## JURISDICTION

12. This action is brought pursuant to 42 U.S.C. Sections 1981 and 1983 and the First, Fourth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is conferred upon this Court by 42 U.S.C. Sections 1981, 1983 and 28 U.S.C. Sections 1331 and 1343(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

13. Plaintiff's claim for declaratory and injunctive relief is authorized by 28 U.S.C. Sections 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

14. The plaintiff further invokes this Court's pendent jurisdiction, pursuant to 28 U.S.C. Section 1367(a), over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this Court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

15. The plaintiff demands a trial by jury on each and every one of her claims as pleaded herein.

## VENUE

16. Under 28 U.S.C. Sections 1391 (a), (b), and (c) venue is proper in the Eastern District of New York.

## NOTICE OF CLAIM

17. Plaintiff filed a Notice of Claim with the Metropolitan Transportation Authority on October 29, 2021, within ninety (90) days of the events complained of herein.

18. More than thirty (30) days have elapsed since the filing of such notice, and adjustment or payment thereof has been neglected or refused.

19. A hearing pursuant to N.Y. Gen. Mun. Law Section 50-h was held on March 15, 2022.

20. This action has been commenced within one year after the occurrence of the events upon which these claims arise.

## PARTIES

21. Plaintiff, **ASHLEY MARTIN**, is a twenty-four (24) year old African American woman. She is a citizen and resident of the United States and was at all times relevant herein a resident of the County of Kings, State of New York and of full age.

22. Defendant **GABRIELLA MARINO** is and was at all times relevant herein a duly appointed and acting officer, servant, employee and agent of the Metropolitan Transportation Authority Police Department, a municipal agency. Defendant **GABRIELLA MARINO** is and was at all times relevant herein acting under the direction and control of the Metropolitan Transportation Authority Police Department, a municipal agency, and was acting pursuant of her official capacities.

23. Defendant **GIANFRANCO SORIENTE** is and was at all times relevant herein a duly appointed and acting officer, servant, employee and agent of the Metropolitan Transportation Authority Police Department, a municipal agency. Defendant **GIANFRANCO**

5

**SORIENTE** is and was at all times relevant herein acting under the direction and control of the Metropolitan Transportation Authority Police Department, a municipal agency, and was acting pursuant of his official capacities.

24. Defendant **JOHN DOES**, the identity and number of whom are presently unknown, were at all relevant times duly appointed and acting officers, servants, employees and agents of the Metropolitan Transportation Authority Police Department, a municipal agency. Defendant **JOHN DOES** were at all relevant times acting under the direction and control of the Metropolitan Transportation Authority Police Department, a municipal agency, and were acting pursuant to either their official policy, or the custom, practice and usage of the Metropolitan Transportation Authority Police Department, a municipal agency. Defendant **JOHN DOES** are sued individually and in their official capacities.

25. Defendant **METROPOLITAN TRANSPORTATION AUTHROITY** is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant **METROPOLITAN TRANSPORTATION AUTHORITY** assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by members of the Metropolitan Transportation Police Department.

26. Defendant **METROPOLITAN TRANSPORTATION AUTHORITY** was at all times relevant herein the public employer of defendants **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES**.

27. At all times relevant herein, **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES** were acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of New York, and the Metropolitan Transportation Authority Police Department, a municipal agency, and were acting in the course and scope of their duties and functions as officers, agents, servants, and employees of the Metropolitan Transportation Police Department, a municipal agency, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. At all times relevant herein, they were acting for and on behalf of the Metropolitan Transportation Authority Police Department, a municipal agency, with the power and authority vested in them as officers, agents, servants and employees of the Metropolitan Transportation Authority Police Department, a municipal agency.

## FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENT AND 42 U.S.C. SECTIONS 1981 AND 1983

28. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

29. The conduct and actions of defendants **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES**, acting under color of law, in colliding with the plaintiff's vehicle, causing her to sustain injuries, arresting the plaintiff and charging her with driving while intoxicated, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed

under 42 U.S.C. Sections 1981, 1983, and Fourth and Fourteenth Amendments to the United States Constitution.

30. As a result of the foregoing, plaintiff was detained, arrested, prosecuted, sustained painful injuries to her body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## SECOND CLAIM

## DEPRIVIATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. SECTIONS 1981 and 1983

31. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

32. The conduct and actions of defendants **GABRIELLA MARINO**, **GIANFRANCO SORIENTE** and the **JOHN DOES**, acting under color of law, in falsifying and fabricating and conspiring to falsify and fabricate, an account of the motor vehicle accident and of the events surrounding the detention, arrest and prosecution of the plaintiff, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. Sections 1981, 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

33. As a result of the foregoing, plaintiff was detained, arrested, prosecuted, sustained painful injuries to her body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## THIRD CLAIM

## DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. SECTIONS 1981 AND 1983

34. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

35. The conduct and actions of defendants, **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES**, acting under color of law, in making false statements was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. Sections 1981, 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

36. As a result of the foregoing, plaintiff was detained, arrested, prosecuted, sustained painful injuries to her body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## FOURTH CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. SECTIONS 1981 AND 1983

37. The plaintiff incorporates by reference each proceeding allegation as if fully set forth herein.

38. The conduct and actions of defendants, **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES**, acting under color of law, in failing to intercede or take any steps to protect plaintiff from the unjustified and unconstitutional treatment she was received at the hands of the police officer defendants, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of

9

plaintiff's Constitutional rights as guaranteed under 42 U.S.C. Sections 1981, 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

39. As a result of the foregoing, plaintiff was arrested, prosecuted, was subject to great humiliation, and was otherwise damaged and injured.

## FIFTH CLAIM

### LIABILITY OF DEFENDANT METROPOLITAN TRANSPORTATION AUTHORITY FOR CONSTITUTIONAL VIOLATIONS

40. Plaintiff incorporates by reference the allegations set forth in each preceding paragraph as if fully set forth herein.

41. At all times material to this complaint, defendant **METROPOLITAN TRANSPORTATION AUTHORITY**, acting through the **METROPOLITAN TRANSPORTATION POLICE DEPARTMENT**, had in effect *de facto* policies, practices, customs and usages that condoned and fostered the unconstitutional conduct of the defendant police officers, and were a direct and proximate cause of the damages and injuries complained of herein.

42. These policies, practices, customs and usage include, *inter alia*: (a) the failure to properly screen, train, supervise, discipline, transfer, counsel and/or otherwise control MTA police officers engaged in deceptive and false behavior and statements involving their actions and/or the actions of their fellow officers; (b) the police code of silence wherein police officers regularly cover-up police use of deceptive and false behavior by telling false and incomplete stories, *inter alia,* official reports, in statements to their command, the Internal Affairs Bureau, in public statements and on police reports.

43. The MTA's internal watchdog got more complaints than ever before last year, according to a new report showing the Office of Inspector General got 1,400 grievances about the transit

agency in 2021. The Authority's two law enforcement arms, the MTA Police Department ("MTAPD") and Bridges and Tunnels police, have shown a lack of transparency for how they handled misconduct complaints, according to a pair of reports by the Office of Inspector General ("OIG").[1]

44. MTAPD receives complaints about police officers' conduct via a wide variety of channels, such as the MTA's website complaint form; calls to the MTA's Customer Service center, MTAPD's direct phone numbers, and 511; U.S. postal mail; and the MTA press office. In addition, IAB accepts referrals of complaints originally received by the OIG, NYPD, the NY State Police, and MTA operating agencies. Referrals are quite common, because members of the public often have difficulty discerning which agency employs the police officer with whom they have interacted.[2]

45. Officers both at the district level and in the IAB handle cases concerning officers' behavior. According to an MTAPD policy manual, district-level personnel typically investigate complaints on such topics as officers' tardiness, discourtesy, or insubordination. In contrast, IAB investigators address more serious complaints about corruption, brutality, death or serious injury, criminal misconduct, breach of civil rights, or misconduct involving several officers. The Chief of IAB is ultimately responsible for determining whether the IAB or the district will investigate a specific complaint.[3]

---

[1] https://www.amny.com/transit/mta-watchdog-got-record-number-of-complaints-in-2021-report
[2] MTA/OIG Report #2021-08 June 2021 REFORM AND TRANSPARENCY AT THE MTA POLICE DEPARTMENT – FINAL
[3] *Ibid.*

46. In the 3-year period OIG examined, from July 1, 2017 to June 30, 2020, IAB received 155 complaints about officers' behavior. This is an average of 52 complaints per year, or 4 per month.[4]

47. Acting under color of law, by and through the policy-makers of the **METROPOLITAN TRANSPORTATION AUTHORITY** and pursuant to official policy or custom and practice, the **METROPOLITAN TRANSPORTATION AUTHORITY** intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the individuals who encounter the **METROPOLITAN TRANSPORTATION AUTHORITY** failed to effectively screen, hire, train, instruct supervise, control and discipline, on a continuing basis, their police officers, including the defendant MTA police officer(s) herein, for their propensity for deception, falsehoods, for racial bias, for lack truthfulness, for fabricating criminal charges and falsely swearing to criminal complaints against citizens for the purpose of shielding themselves against criminal and/or civil liability for violating those citizens' civil rights, and for the failure protect citizens from unconstitutional conduct of other MTA police officers, thereby permitting and allowing the individual defendant MTA police officers herein to be in position to violate her federal and state unconstitutional rights, and/or to permit these actions to take place without her knowledge or consent.

48. On information and belief, the defendant MTA police officers herein have been the subject of prior civilian and departmental complaints of misconduct that gave notice to, or should have given notice to, the defendant **METROPOLITAN TRANSPORTATION AUTHORITY** that the defendant MTA police officers herein were likely to engage in conduct that would violate the civil and constitutional rights of the public, such as the

---

[4] *Ibid.*

conduct complained of by the plaintiff herein. The **METROPOLITAN TRANSPORTATION AUTHORITY** had knowledge of or, had it diligently exercised its duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts were going to be committed. Defendant **METROPOLITAN TRANSPORTATION AUTHORITY** had the power, authority and duty to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, recklessly or with deliberate indifference to the rights of the individuals who encounter the **METROPOLITAN TRANSPORTATION AUTHORITY** failed to do so.

49. On information and belief, defendant **METROPOLITAN TRANSPORTATION AUTHORITY** and its Police Department maintained an inadequate structure for risk containment and stress management relative to its police officers and failed to create proper means of containing such risk and managing such stress. *Inter alia*, the structure was deficient, at the time of selection of MTA police officers and thereafter during the employment, in its ability to evaluate and exchange information within the command structure about the performance of individual MTA police officers; in its training of supervisory personnel to effectively and adequately evaluate performance of an officer; and in its ability to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at a large or to specific segments thereof. The effect of this was to permit MTA police officers of the **METROPOLITAN TRANSPORTATION AUTHORITY** to function at levels of significant and substantial risk to the public in general.

50. As a result of the foregoing conscious policies, practices, customs and/or usages, defendant **METROPOLITAN TRANSPORTATION AUTHORITY** and its Police Department have permitted and allowed the employment and retention of individuals as MTA police officers whose individual circumstances place the public or segments thereof at substantial risk of being the victims of violent or racially motivated behavior. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to the plaintiff herein.

51. As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, the plaintiff has suffered permanent mental and emotional injury and pain, anguish, suffering humiliation and embarrassment.

## SIXTH CLAIM

## ASSAULT AND BATTERY

52. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

53. By the actions describe above, defendants **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES**, did inflict assault and battery upon the plaintiff herein, when they caused her vehicle to be T-boned by their vehicle, when they subjected her to false arrest and malicious prosecution - - a malicious prosecution that was not dismissed until January 2022. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed her by the laws and Constitution of the State of New York.

54. As a result of the foregoing, plaintiff was arrested, prosecuted, sustained painful injuries to her body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

## SEVENTH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

55. The plaintiff incorporates by reference each preceding allegations as if fully set forth herein.

56. By the actions described above, defendants **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES,** engaged in extreme and outrageous conduct, conduct utterly intolerable in a civilized community, which intentionally caused severe emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed her by the laws and Constitution of the State of New York.

57. As a result of the foregoing, plaintiff was made ill, was subjected to great humiliation, and was otherwise damaged and injured.

## EIGHTH CLAIM

### CONSPIRACY

58. The plaintiff's incorporates by reference each preceding allegation as if fully set forth herein.

59. By the actions described above, defendants **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES** jointly and severally, acting in their individual capacities and under color of law, conspired together and maliciously and willfully entered into a scheme to deprive plaintiff to her rights, well-being and to commit the above-alleged unlawful acts. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her rights as guaranteed her by the Fourth and Fourteenth Amendments to the Constitution of the United States, and protected by 42

U.S.C. Sections 1981, 1983, and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

60. As a result of the foregoing, plaintiff sustained painful injuries, was made ill, was subjected to great humiliation and emotional distress, was detained, and was otherwise damaged and injured.

## NINTH CLAIM

### NEGLIGENCE

61. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

62. As MTA police officers, defendants, **GABRIELLA MARINO**, **GIANFRANCO SORIENTE** and the **JOHN DOES,** had a duty to care, protect and obtain medical treatment for Ms. Martin when she was detained, arrested and prosecuted.

63. By the actions described above, defendants, **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES** jointly and severally, negligently caused severe physical injuries, and caused severe physical injuries, and caused extreme emotional distress to plaintiff. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed her by the laws and Constitution of the State of New York.

64. As a result of the foregoing, plaintiff sustained painful injuries, was made ill, was subjected to great humiliation and emotional distress, detained, and was otherwise damaged and injured.

## TENTH CLAIM

### PRIMA FACIE TORT

65. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

66. By the actions described above, defendants **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES** inflicted harm upon Ms. Martin without excuse or justification, out of disinterested malice.

67. As a result of the foregoing, plaintiff sustained painful injuries, was made ill, was subjected to great humiliation and emotional distress, was detained, and was otherwise damaged and injured.

### ELEVENTH CLAIM

### NEGLIGENCE HIRING, SCREENING RETENTION, SUPERVISION AND TRAINING

68. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

69. The defendant **METROPOLITAN TRANSPORTATION AUTHORITY** negligently hired, screened, retained, supervised and trained the individual defendant MTA police officers. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed her by the laws and Constitution of the State of New York.

70. As a result of the foregoing, plaintiff sustained painful injuries, was made ill, was subjected to a great humiliation and emotional distress, was detained, and was otherwise damaged and injured.

### TWELTH CLAIM

### *RESPONDEAT SUPERIOR* LIABILITY OF THE METROPOLITAN TRANSPORTATION AUTHORITY FOR THE STATE LAW VIOLATIONS

71. The plaintiff incorporates by reference each preceding allegation as if fully set forth herein.

72. The conduct of defendants **GABRIELLA MARINO, GIANFRANCO SORIENTE** and the **JOHN DOES** alleged herein, occurred while they were on duty and in and during the course and scope of their duties and functions as MTA police officers, and while they were acting as agents, officers, servants and employees of the defendant **METROPOLITAN TRANSPORTATION AUTHORITY**, and as a result the defendant **METROPOLITAN TRANSPORTATION AUTHORITY** is liable to the plaintiff pursuant to the state common law doctrine of *respondeat superior*.

73. As a result of the foregoing, plaintiff was detained, arrested, prosecuted, sustained painful injuries to her body, was made ill, was subject to great humiliation, and was otherwise damaged and injured.

**WHEREFORE,** the plaintiff demands the following relief jointly and severally against all of the defendants:

   a. Compensation damages;

   b. Punitive damages;

   c. The convening and empaneling of a jury to consider the merits of the claims herein;

   d. Costs and interest and attorney's fees;

   e. Such other and further relief as this court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated:   Hollis, New York
         June 24, 2022

_____
RENÉ MYATT , ESQ. [RM-4406]
*Attorney for Plaintiff*
**ASHLEY MARTIN**
204-04 Hillside Avenue, 2nd Floor

Hollis, New York  11423
(718) 468-3588
myattlegal@gmail.com

19